IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ELLEN M. SCHNEEBERG,

                              Plaintiff,                    OPINION AND ORDER

    v.
                                                           09-cv-209-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of

Social Security, denying plaintiff Ellen M. Schneeberg's application for Supplemental

Security Income under Title XVI of the Social Security Act, codified at 42 U.S.C.

§ 1382(c)(3)(A). Plaintiff contends that the administrative law judge erred in determining

plaintiff's residual functional capacity when he discounted the opinion of her treating

physician, failed to properly evaluate her mental limitations, improperly assessed her

credibility and erred in finding at step five of the sequential evaluation process that there

were jobs available in the economy that plaintiff could perform. I am rejecting plaintiff's

arguments and affirming the commissioner's decision. Although there is little doubt that

plaintiff suffers from significant pain as a result of her degenerative disc disease, substantial

1

evidence in the record supports the administrative law judge's conclusion that plaintiff's pain, depression and medication side effects are not so severe as to prevent her from performing unskilled, sedentary work that allows her to change position from sitting to standing at will.  Further, the administrative law judge built an adequate bridge between the evidence and his decisions to reject the opinion of plaintiff's treating physician and plaintiff's own complaints of disabling limitations.  Finally, to the extent there was any conflict between the vocational expert's testimony and The Dictionary of Occupational Titles about the degree of skill required of the various jobs identified by the expert, the conflict was not apparent and plaintiff's attorney did not object to the testimony at the hearing.

The following facts are drawn from the administrative record (AR):

## FACTS

### A.  Background

Plaintiff was born on December 5, 1975.  AR 76.  She graduated from high school. AR 338.  Her past relevant work includes work as a transcriptionist (sedentary, semi-skilled), waitress (light, unskilled), and cashier (light, unskilled).  AR 135, 356.

Plaintiff filed an application for supplemental security income on May 26, 2005, alleging that she had been unable to work since May 1, 2004 because of a back condition. AR 124.

On June 21, 2005, plaintiff completed a function report in which she stated that she cared for her three children, cooked, cleaned, did laundry and shopped once a week. She indicated that it took her longer to do these tasks than in the past and that she had some difficulty with personal care because of pain. She also noted that she gets stressed easily and gets nervous around people. AR 118-25.

After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on July 15, 2008 before Administrative Law Judge Ronald Bernoski. The administrative law judge heard testimony from plaintiff, AR 338-55, and a neutral vocational expert, AR 356-67. At the hearing plaintiff amended her onset date to October 21, 2005. AR 14. On September 18, 2008, the administrative law judge issued his decision, finding plaintiff not disabled. AR 14-23A. This decision became the final decision of the commissioner on January 5, 2009, when the Appeals Council denied plaintiff's request for review. AR 5-8

## B. Medical Evidence

### 1. Treating physicians

On March 7, 2005, plaintiff saw Dr. Thomas Stark for low back pain, depression and anxiety. He referred her to Dr. Kevin J. Weber, an orthopedic specialist. AR 310.

On March 22, 2005, plaintiff saw Dr. Weber.  After examining plaintiff, Weber noted she had normal alignment in the lower back and some tenderness in the upper buttocks bilaterally but no tenderness in the sciatic notch.  He concluded she had chronic low back pain with radiating pain into the thighs but no neural deficits.  AR 250.  The next day, plaintiff had a magnetic resonance imaging scan, which showed severe disc space narrowing at L4-5 and L5-S1 with a somewhat lesser degree of narrowing at L3-4.  There was a small midline disc protrusion at L4-5 with no frank disc herniations and no evidence of foraminal compromise.  AR 249.

On March 29, 2005, plaintiff returned to see Dr. Weber.  After reading the scan, he advised plaintiff that she had degenerative disc disease at L3 to S1, which was very significant for someone who was only 29 years old.  He also told her that it was going to get worse as time went on.  Weber continued plaintiff on Percocet.  AR 248.

Plaintiff returned to see Dr. Stark in April 2005.  He prescribed methadone and Percocet and recommended that she avoid heavy lifting.  AR 307.  Later in April, Stark adjusted her pain medications.  Stark wrote that Dr. Weber had recommended physical therapy, no heavy lifting and staying away from any job that required twisting, turning or bending.  AR 308.

In May 2005, plaintiff returned to see Dr. Stark after being referred to Dr. Oh for a disability rating.  Stark wrote that Dr. Oh had discussed possible treatments of epidural

corticosteroid injections, a trial of a tricyclic antidepressant, anticonvulsant medicine such as Neurontin and a trial of a TENS unit.  Stark examined plaintiff, finding her neurological functions were intact.  He diagnosed chronic back pain with evidence of bilateral lower extremity paresthesias and lumbar spine significant for severe disc space narrowing at L4-5 and L5-S1.  He adjusted her pain medication.  AR 305.

On October 7, 2005, plaintiff saw Dr. Susan Kreckman for follow-up regarding her chronic low back pain.  According to Kreckman's notes, she had seen plaintiff before, although there are no notes from that prior visit in the record.  Plaintiff reported taking six to eight Percocet a day.  Also, she reported some decrease in her depression and anxiety symptoms since she started taking Effexor.  On examination, Kreckman noted that plaintiff had no back tenderness, reasonable range of motion and no neurological deficits.  Kreckman diagnosed chronic low back pain and degenerative disc disease, renewed plaintiff's Percocet prescription and gave her a trial of atenolol for help with anxiety, tachycardia and borderline hypertension.  AR 323-24.

Plaintiff returned to Dr. Kreckman on November 30, 2005.  Plaintiff reported that her anxiety was under much better control with the combination of the Effexor and atenolol, but her pain was not being controlled on the Percocet.  Kreckman changed plaintiff's prescription to methadone.  AR 322.

On January 27, 2006, plaintiff saw Dr. Kreckman because she was having increased pain in her legs.  On examination, plaintiff had no tenderness, good range of motion except for minimal limitation in forward flexion and normal strength in her lower extremities. Plaintiff was able to walk on her heels and toes and straight leg raise was negative bilaterally. Kreckman reassured plaintiff that she did not detect any evidence of disc herniation.  She wrote, "At this point I recommended watchful waiting rather than referral or other interventions."  AR 321.

There are no other treatment notes from Dr. Kreckman in the record.  On July 7, 2008, Dr. Kreckman completed a functional capacity questionnaire.  AR 153-57.  She stated that plaintiff had been her patient since September 2005 and that she had seen her every one to three months on average.  She indicated that plaintiff had a reduced range of motion, tenderness, impaired sleep, anxiety and severe stress.  She noted that plaintiff's pain from her lumbar degenerative disease would often interfere with her attention and concentration and that she was moderately limited in her ability to deal with the normal stresses of competitive employment.  Kreckman estimated that plaintiff could sit for 30 minutes at a time, stand for one hour at a time and lift 10 pounds.  Also, she noted that plaintiff would need to change positions at will, could sit two hours and stand or walk four hours total in an eight-hour workday.  She concluded that plaintiff could not work full time and would be absent more than two days a month.

6

2.  Emergency room treatment

On June 29, 2006, plaintiff was seen in the emergency room complaining of low back pain radiating down her left leg.  Plaintiff stated that her doctor was out of town and that Tylenol was not relieving the pain.  On examination, plaintiff had minimal tenderness in her lower back.  The doctor diagnosed chronic low back pain, prescribed Tylenol #3 and Flexeril and advised plaintiff to follow up with her regular doctor.  AR 193-94.

Plaintiff returned to the emergency room on September 29, 2006, complaining of emotional withdrawal symptoms from methadone and low back pain.  AR 197.  She had tender to low back palpitations.  AR 199.  An x-ray of the lumbar spine showed significant localized osteoarthritic disc space narrowing at L4-5 and L5-S1.  AR 200.  The doctor diagnosed chronic low back pain, prescribed Percocet, and told plaintiff to follow up with her regular doctor.  AR 199.

On October 2, 2006, plaintiff returned to the emergency room complaining of anxiety.  She asked for more pain medication because her doctor was out of town.  Her back was tender on examination.  Again, the doctor diagnosed chronic back pain and prescribed Percocet for several days.  AR 203-04.

On March 12, 2007, plaintiff was seen in the emergency room after an accident, complaining again of low back pain.  On examination her neurological functions were intact.  X-rays of her lumbar spine were consistent with her September 2006 x-ray.  Her diagnosis

was acute exacerbation of low back pain.   AR 217-24.   Plaintiff returned the next day complaining of back pain from the accident.   Plaintiff was tender to palpitations on the left side of her back.   Her diagnosis was cervical muscle and low back strain.   AR 227-29.

On April 14, 2007, plaintiff returned to the emergency room complaining of low back pain.   Her diagnosis was low back pain and depression.   She was prescribed Percocet.   AR 234 -37.

On December 25, 2007, plaintiff was transferred from Sauk Prairie Memorial Hospital to the intensive care unit of St. Mary's Hospital for marked alteration in her mental status.   She had been taking excessive amounts of methadone and drinking alcohol.   AR 141.   She developed severe alcohol withdrawal syndrome while at the hospital.   A computed tomography scan showed no evidence of any significant intra-cranial injury.   She was given a diagnosis of narcotic and alcohol intoxication and withdrawal syndrome.   AR 148-50.

After a transfer to short-term rehabilitation care on January 1, 2008, plaintiff had an addiction medicine consultation with Dr. Michael Miller, who diagnosed probable alcohol dependence with physiologic dependence, history of opoid misuse and nicotine dependence.   He assigned plaintiff a Global Assessment of Functioning score of 40, indicating serious limitations in functioning.   AR 169.   Miller talked to Dr. Kreckman, who reported that she had had concerns about plaintiff's drinking.   Kreckman told Miller that she had confronted plaintiff at an appointment about her drinking and advised her to stop.   In addition,

Kreckman said, she had changed plaintiff's opioid prescription patterns, realizing that plaintiff was irresponsibly mixing alcohol with pills.  AR 166.

By the time of her discharge, plaintiff had improved significantly and was independent with basic ambulation and other self-care activities.  After plaintiff complained of back pain, the doctors re-started her on methadone and Percocet.  AR 158.


3.  Mental health treatment

In March 2005, plaintiff reported that she was seeing Cindy at the Pauquette Center for Psychological Services for ongoing therapy.  AR 310.  On May 19, 2005, plaintiff's therapy sessions at the Pauquette Center were terminated because she failed to return for appointments.  AR 273.

In January 2008, plaintiff resumed counseling sessions at the Pauquette Center.  She attended five sessions and complained that an upcoming child custody hearing was making her more anxious.  AR 177.  She also expressed anxiety because Dr. Kreckman was refusing to write prescriptions for certain medications, including  anxiety medications.  AR 182-83.  On April 1, 2008, Dr. Kreckman called the psychologist at the Pauquette Center to ask whether plaintiff was attending regular counseling sessions.  The psychologist told Kreckman that she had not seen plaintiff since January 31 but would followup with her.  AR 182.  On April 7, 2008, plaintiff saw the psychologist, who referred her to a psychiatrist.  AR 181.

Plaintiff saw psychiatrist M. Sarfaraz Khan in April 2008.  He noted that plaintiff was anxious but had a stable mood, a coherent thought process and intact cognition, insight and judgment.  AR 179.  Plaintiff's memory was functional and she did not express any paranoia, delusions or suicidal or homicidal ideations.  AR 179.  He assigned plaintiff a Global Assessment of Functioning score of 55, indicating moderate limitations in functioning.  AR 180.  During these sessions plaintiff improved and showed progress in overall functioning.  AR 174.

C.  Consulting Physicians

On October 31, 2005, Dr. Ward Jankus examined plaintiff at the request of the state disability agency.  Plaintiff told Jankus that she could stand for one hour, sit for an hour, walk for a block and lift 10 pounds.  AR 246.  On examination, plaintiff had normal reflexes, negative straight leg raising and full strength in her lower extremities.  Her gait pattern was smooth overall with no weakness briefly walking on tiptoes and heels.  Jankus observed that plaintiff was maneuvering independently on the exam table and was able to sit through the interview.  He concluded that plaintiff had chronic mechanical back pain secondary to multilevel degenerative disc changes but no current evidence of radicular damage.  AR 247.

On November 4, 2005, state agency physician Pat Chan completed a physical residual functional capacity assessment.  Chan found that plaintiff could lift 20 pounds occasionally

10

and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day with no other limitations. AR 265-72. On April 3, 2006, state agency physician Syd Foster affirmed Chan's assessment. AR 238.

On November 4, 2005, state agency consulting psychologist William Merrick completed a Psychiatric Review Technique Form after reviewing the evidence of record. He evaluated the evidence under the listing category for affective disorder. In addressing the "B" criteria for this listing, he found plaintiff had no restrictions of activities of daily living, mild limitations in maintaining social functioning, mild limitations in maintaining concentration, persistence or pace and no episodes of decompensation. Merrick concluded that the evidence did not establish the presence of the "C" criteria. AR 251-63.

On December 14, 2005, state agency medical consultant Carole Rosanova reviewed the psychiatric review technique form completed by Merrick. She agreed with Merrick's conclusions. She wrote that plaintiff was able to follow instructions and to get along with others. AR 240. On April 7, 2006, state agency psychologist Keith Bauer affirmed Merrick's assessment. AR 239.

D. Hearing Testimony

1. Plaintiff

Plaintiff testified at the hearing to the following:

11

She is divorced and has three children, ages ten, nine and six. She previously worked as a cashier, waitress and transcriptionist. AR 339-41. She quit her last job because she moved away from her ex-boyfriend. AR 353.

Dr. Kreckman, her family physician, treated her for four years for pain management, depression and anxiety. Plaintiff has low back pain caused by severe degenerative disc disease. Taking methadone and Percocet relieves the pain, which goes from her back down both legs. AR 342-44.

Plaintiff takes Lexapro for depression. AR 344. She has had depression for four years. Living with pain depresses her. AR 345.

Plaintiff takes care of her children. Her mother helps with the housework, but she does laundry. She goes shopping once a month. AR 347. During the day, plaintiff sits in a recliner with pillows behind her back. AR 351. She has trouble picking things up with her fingers. AR 352-53.

Plaintiff had been treated in the hospital for overuse of medications and alcohol but had not used alcohol for at least a year. She went to therapy for a while for alcohol abuse. AR 355.

2.  <u>Vocational expert</u>

The administrative law judge called Michelle Albers to testify as a neutral vocational expert.  She testified that plaintiff's past work as a transcriptionist was sedentary and semi-skilled.  The waitress job was light unskilled work and the cashier was light unskilled work. AR 356.  Further, she testified that the transcriptionist job would require sitting up to two hours at a time.  AR 357.

The administrative law judge asked Albers whether there were office clerical positions that allow for more movement or a sit-or-stand option.  Albers said there were, identifying examples such as information clerk, receptionist and office file clerk.  She testified that these jobs were all sedentary and were unskilled to low, semi-skilled jobs that could be typically learned in about 30 days on the job.  Albers testified that plaintiff could use some of the skills she had used as a transcriptionist in these jobs.  AR 358.

Albers testified that there were 4,000 information clerk jobs, 6,000 receptionist jobs, 15,000 general office clerk jobs and 2,000 file clerk jobs in Wisconsin.   When the administrative law judge asked Albers whether the answers she gave and the data that she furnished were consistent with <u>The Dictionary of Occupational Titles</u>, she answered, "Yes." AR 359.

On cross-examination by plaintiff's attorney, Albers testified that these jobs would be eliminated if the individual could not work an eight hour day or would miss more than two

13

days of work a month.  AR 350-60.  Albers also testified that, if an individual was drowsy

and had short term memory loss, it would have an adverse effect on the individual's ability

to sustain competitive employment of any kind.  AR 360.

### E.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge

performed the required five-step sequential analysis.  See 20 C.F.R. § 416.920.  Under this

test, the administrative law judge considers sequentially 1) whether the claimant is currently

employed; 2) whether the claimant has a severe impairment; 3) whether the claimant's

impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App.

1;  4) whether the claimant can perform his past work; and 5) whether the claimant is

capable of performing work in the national economy.  Knight v. Chater, 55 F.3d 309, 313

(7th Cir. 1995).  If a claimant makes it through steps one through three, he is found

automatically to be disabled.  If the claimant meets steps one and two, but not three, under

step four he must show that he cannot perform his past work.  Id.  The claimant bears the

burden of proof in steps one through four.  If the claimant satisfies step four, the burden

shifts to the commissioner to prove that the claimant is capable of performing work in the

national economy.  Id.

14

At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since October 31, 2005, her amended alleged onset date.  At step two, he found that a plaintiff had the severe impairments of chronic low back pain and affective disorder and overuse of medications and alcohol on at least one occasion.  At step three, the administrative law judge found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  He noted that the medical record lacked objective evidence of a back impairment that met listing 1.04.  AR 16.  Also, he found that plaintiff's mental impairment did not meet the criteria of the listing for affective disorders, noting that plaintiff had no restrictions in the activities of daily living, only mild difficulties in social functioning, and in maintaining concentration, persistence or pace, and no episodes of decompensation or evidence of the "paragraph C" criteria.  AR 16-17.

The administrative law judge found that plaintiff retained the residual functional capacity to perform sedentary work that was unskilled and allowed her to change her position at will.  In determining plaintiff's residual functional capacity, the administrative law judge concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible.  AR 19.

At step four, the administrative law judge found that plaintiff was not able to perform her past work.  Also, he found that transferability of job skills was not material.  AR 22.  At

15

step five, the administrative law judge found, from the vocational expert's testimony that there were 15,000 file clerk jobs, 6,000 receptionist jobs, 4,000 information clerk jobs and 2,000 file clerk jobs available in Wisconsin that plaintiff could perform. The administrative law judge found the expert's testimony consistent with the information contained in the Dictionary of Occupational Titles. He then concluded that plaintiff was not disabled. AR 23.

OPINION

A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards

16

v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

B. Residual Functional Capacity

Plaintiff objects to the administrative law judge's physical residual functional capacity finding.  A claimant's "residual functional capacity" is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Social Security Ruling 96-8p; see also 20 C.F.R. § 416.945.  A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.  At the disability hearing stage, the responsibility for determining the claimant's residual functional capacity lies with the administrative law judge, who must consider all relevant medical and other evidence in the record, including statements from medical sources, the claimant and others.  20 C.F.R. §§ 416.945, 416.946.

Plaintiff contends that the administrative law judge committed three errors in determining her residual functional capacity:  1) he failed to provide good reasons for

17

rejecting Dr. Kreckman's opinion that plaintiff was incapable of performing any full time work; 2) he did not accurately characterize plaintiff's daily activities and committed other errors in determining plaintiff's credibility; and 3) he failed to properly evaluate plaintiff's mental limitations.

1.  Treating physician opinion

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).   A treating source's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.   20 C.F.R. § 416.927(d)(2).   When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.   Hofslien, 439 F.3d at 377.   When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.   Id.   These factors include the number of times the treating physician has

18

examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.  20 C.F.R. § 416.927(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

The administrative law judge explained that he was giving little consideration to the limitations outlined by Dr. Kreckman on the July 2008 functional capacity evaluation form, finding that the "the medical record is void of treatment evidence to support them." AR 21. He also found that Kreckman's opinion was inconsistent with the overall objective medical evidence and with plaintiff's own statements "as to her ability to care for her children and perform routine household tasks such as laundry and cleaning."  Id.  Although the administrative law judge did not identify what it was about plaintiff's ability to care for her children and perform household tasks that he perceived to be inconsistent with Kreckman's limitations, I am nonetheless satisfied that the administrative law judge properly applied the regulation and cited good reasons to reject Kreckman's opinion.

Contrary to plaintiff's contention, the administrative law judge did not question whether Kreckman had an ongoing treating relationship with plaintiff.  Id. ("The undersigned acknowledges the recent report from Dr. Kreckman, which indicates she had

19

treated the claimant since September 2005.").  Instead, he applied the regulation and found that Kreckman's opinion was not well supported by medically acceptable clinical and laboratory diagnostic techniques.   In particular, there were no treatment notes from Kreckman to support the severe limitations she endorsed in July 2008.  The record includes treatment notes from only three visits with Kreckman.   The notes fail to provide any objective evidence to support the restrictions later listed by Kreckman, insofar as plaintiff had good range of motion, no tenderness, no neurological deficits and normal strength in her extremities.

The administrative law judge properly noted that the other objective medical evidence in the record failed to support Dr. Kreckman's limitations.  As he pointed out, the MRI scan showed no herniation or foraminal compromise.  He also noted that Jankus, the consulting physician, found no evidence of radicular damage.  Jankus observed that plaintiff was able to get on the exam table independently, sit through the interview, bring her fingertips to the floor, squat and stand up without problems and move her extremities with no restriction. Although it is true that plaintiff has a diagnosis of a severe, degenerative condition, it is not the condition itself but rather the limitations that it causes that are crucial to the disability analysis.  In this case, the administrative law judge properly found a lack of evidence to support the restrictions offered by Kreckman.

20

Plaintiff's suggestion that the administrative law judge should have re-contacted Dr. Kreckman to clarify her opinion is unpersuasive.  Indeed, plaintiff concedes that Kreckman "amply stated the reasons for her opinion."  Br. in Supp., dkt. #8, at 24.  Insofar as plaintiff may be suggesting that the administrative law judge did not meet his burden to develop the record, she does not explain what more he should have done.  Therefore, she has waived it.  Kurzawa v. Jordan, 146 F.3d 435, 447-48 (7th Cir. 1998) (court will not formulate parties' arguments).  I note, however, that plaintiff has not suggested that additional treatment notes from Kreckman exist or suggest that they would have led to a finding of disability.  "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."  Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994).

In sum, the administrative law judge provided good reasons, supported by substantial evidence in the record, for not giving controlling weight to the opinion of Kreckman.  Hofslien, 439 F. 3d at 377 (administrative law judge determines how much weight to give various medical opinions and court will uphold that decision if it is supported by substantial evidence).  The administrative law judge did not err in discounting Kreckman's opinion that plaintiff was disabled.

## 2.  Credibility

Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely

credible.  Although the court affords an administrative law judge's credibility finding "considerable deference" and will overturn it only if "patently wrong," Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006), the administrative law judge must consider the claimant's level of pain, medication, treatment, daily activities and limitations, 20 C.F.R. § 416.929(c), and must justify the credibility finding with specific reasons supported by the record, Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).  A lack of objective evidence alone is an insufficient reason to discredit a claimant's testimony.  SSR 96-7p; 20 C.F.R. § 416.929(c)(2); Villano, 556 F.3d at 562.  Nonetheless, "[d]espite the inherent difficulty of evaluating testimony about pain, an administrative law judge will often have solid grounds for disbelieving a claimant who testifies that she has continuous, agonizing pain." Johnson v. Barnhart, 449 F.3d 804, 806 (7th Cir. 2006).

The administrative law judge acknowledged that plaintiff had back pain from her degenerative disc disease.  He concluded, however, that it was not so severe as to prevent her from performing sedentary work that allowed her to change positions at will.  In support of his determination, the administrative law judge noted the objective evidence, which showed no evidence of radicular damage; plaintiff's treatment history, which was "conservative in nature;" the fact that the bulk of plaintiff's treatment had been at the emergency room, where she requested narcotics; and plaintiff's own statements regarding her ability to care for her children and perform routine household tasks such as laundry and cleaning.

Plaintiff disagrees with the administrative law judge's conclusion that plaintiff's treatment for her back was conservative.  Plaintiff argues that the regular prescription of high dosages of narcotic medications is not conservative treatment, and further, that her doctors pursued that course of action because nothing else was viable.   Although plaintiff's arguments are not without merit, they do not persuade me that the administrative law judge misinterpreted the record.  In addition to medication, plaintiff's doctors recommended only physical therapy, injections and a TENS unit, treatment that reasonably can be described as conservative.

Plaintiff also contends that the administrative law judge gave undue weight to her limited activities.  Plaintiff points out that at the hearing, she merely said that she "tries to throw in a load" of laundry and that her children were "pretty self sufficient."  However, the administrative law judge also referred in his decision to a June 2005 function report in which plaintiff reported that she carried out routine household chores such as cleaning, laundry, cooking and caring for her three young children, although she carried out her chores more slowly than she had in the past.  Although it would have been helpful for the administrative law judge to explain why he gave these statements more weight than plaintiff's testimony at the hearing, which arguably showed greater restrictions, they were part of the record and the administrative law judge was entitled to consider them, particularly where there was no evidence that plaintiff's condition had worsened significantly between then and the time of the hearing.  Further, notwithstanding plaintiff's testimony that her children, aged 10, 9 and

23

6, were "self-sufficient," the administrative law judge could reasonably conclude that they required at least some level of care.  Overall, I am satisfied that the administrative law judge accurately represented plaintiff's daily activities and properly inferred that they showed plaintiff's pain was not so severe as to prevent her from performing sedentary work with the ability to change position at will.

Plaintiff argues that the administrative law judge failed to address the dizziness, drowsiness and short-term memory loss that she testified she experiences from her medications.  Although I agree that the administrative law judge did not specify what weight, if any, he gave to plaintiff's reported side effects, I am satisfied that this omission was harmless.   Dr. Kreckman identified only drowsiness and constipation as side effects of plaintiff's medications, and plaintiff testified that she generally did not sleep during the day. Further, the administrative law judge restricted plaintiff to simple tasks when he restricted her to unskilled work, and the vocational expert did not identify any jobs requiring work around machinery, heights or other hazards.  In other words, even giving some weight to plaintiff's reported side effects, they would not keep her from performing the jobs identified by the vocational expert.  Donahue v. Barnhart, 279 F.3d 441, 444 (7th Cir. 2002) (remand not required for ALJ's failure to include plaintiff's shortcomings in concentration in hypothetical where vocational expert did not name jobs requiring steady concentration).

Finally, the administrative law judge's conclusion that plaintiff remained capable of performing sedentary work with a sit-or-stand option is supported by the opinions of other

24

doctors who treated plaintiff.  Dr. Stark stated only that plaintiff should avoid heavy lifting.  Dr. Weber recommended that plaintiff not perform heavy lifting, twisting, turning or bending.  These limitations did not preclude plaintiff from performing sedentary work.  The administrative law judge also considered the opinions of the state agency physicians, who found that plaintiff could perform light work.  Assigning some weight to plaintiff's subjective complaints, the administrative law judge found that plaintiff was slightly more limited physically than the state agency physicians had found.  This was a reasonable resolution of the conflicts in the evidence.

### 3.  Mental limitations

Plaintiff contends that the administrative law judge did not properly evaluate her mental limitations.  The administrative law judge acknowledged that plaintiff had received some treatment for depression, primarily related to her complaints of pain, and was hospitalized once for substance abuse.  He concluded, however, that there was no evidence that her mental health problems significantly affected her ability to perform activities of daily living, social functioning or maintain concentration, persistence or pace, or that she lacked the mental ability to perform unskilled work.  AR 22.

Plaintiff contends that the administrative law judge did not properly evaluate the degree to which her stress and anxiety interfere with her ability to perform unskilled work.  I disagree.  To be capable of performing unskilled work, an individual must be able to

understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 416.945(c), SSR 85-15.  The administrative law judge's conclusion that plaintiff possessed these abilities is supported by the opinions of the state agency consultants, who found that plaintiff did not have a severe mental impairment.  One of the state agency medical consultants, Carole Rosanova, noted that by plaintiff's own report, she was able to follow instructions, get along with others and adapt, which are the attributes required for unskilled work.  AR 240.  Further, plaintiff reported that her depression was controlled by medication (AR 116) and that her anxiety was under better control (AR 322). Substantial evidence in the record supports the administrative law judge's conclusion that plaintiff retained the mental residual functional capacity to perform unskilled work.

## C. Step Five

Plaintiff contends that the administrative law judge erred in making his step five finding that there were jobs available in the economy that plaintiff could perform.  First, she argues that the administrative law judge did not ask the vocational expert a hypothetical question.  She is correct.  However, there is nothing in the regulations that requires the administrative law judge to pose a hypothetical to the expert.  The purpose of the expert is to offer testimony on the question whether the claimant can make a vocational adjustment

26

to other types of work that exist in the regional or national economy.   Although a hypothetical describing the claimant's limitations may be the best way to ensure the reliability of the vocational expert's testimony, it is not the only way.   The vocational expert identified jobs in the economy that  were sedentary and unskilled that allowed a sit-or-stand option, which were the limitations ultimately adopted by the administrative law judge.

Second, plaintiff argues that the administrative law judge erred in relying on the vocational expert's testimony because it was inconsistent with The Dictionary of Occupational Titles.   SSR 00-4p (administrative law judge who takes testimony from vocational expert about job requirements must ask expert whether testimony conflicts with the Dictionary of Occupational Titles and must ask expert to explain any conflicts that are identified or obvious); Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008).   The expert answered the administrative law judge's question whether there were office clerical positions that allowed a sit or stand option by identifying certain jobs, and stating that such jobs were typically unskilled to low semi-skilled.   She then provided examples of these jobs, but it is not clear from her testimony whether the jobs she cited fell into the unskilled or semi-skilled category.   Neither the administrative law judge nor plaintiff asked her to provide corresponding citations from the Dictionary of Occupational Titles.   Plaintiff now argues that none of the jobs the vocational expert identified can be performed at the unskilled level, citing various DOT numbers to support her position.   Plt.'s Br., dkt. #8, at 32.   However, when a claimant fails to identify a conflict between the expert's testimony and the

27

<u>Dictionary</u> until after the hearing, remand is required only if the conflict should have been apparent to the administrative law judge.  <u>Terry v. Astrue</u>, 580 F.3d  471, 478 (7th Cir. 2009); <u>Overman</u>, 546 F.3d at 463.  It is impossible to conclude that the administrative law judge should have picked up on a conflict where the vocational expert stated that there were unskilled jobs available in the various occupations she identified and where none of the job titles (information clerk, receptionist, general office clerk and file clerk) lead intuitively to the conclusion that they are semi-skilled.  In any case, there are several unskilled clerk jobs listed in the <u>Dictionary</u>, including telephone quotation clerk  (DOT #237.367-046), call-out operator (DOT #237.367-014), charge account clerk (DOT #205.367-014) and telegraph service rater clerk (DOT #214.587-010).  Accordingly, no conflict exists, and if it did, it was not obvious.  The administrative law judge did not err at step five.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is AFFIRMED and plaintiff Ellen M. Schneeberg's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 12th day of November, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge